We will hear our date next in number 231313 Daedalus Blue v. Vidal. Good morning, your honors. Kevin McNish from McNish PLLC for Appellant Daedalus Blue LLC. May it please the court. The Patent Trial and Appeal Board's decision to hold claims 15 through 25 of the 132 patent obvious rests on an overbroad construction of the term plurality of clients in the limitation receiving one or more attributes of the file from one of a plurality of clients, the clients comprising at least two different computing platforms. Counselor, can I, I'm going to just ask you a question. I personally am thinking right now that maybe a claim construction argument is asking for an advisory opinion from us. And one of the reasons why is because even if I agree hypothetically with your construction or I look at the board's construction, I don't know how that relates to the second prong, the reasonably pertinent to the same problem prong for analogous art. Could you explain that to me? Certainly. I do, I think, I tend to agree with the board that maybe you're reading the field of the invention into the reasonably pertinent to the same problem prong of analogous art. Well, I would say it's actually the opposite. The board read out the distributed storage systems from the specifications description of that problem. And so the plurality of clients construed to be in a networked environment then reflects that the claims are solving problems in the networked environments of distributed storage systems. And at that point, the board's reasonable pertinence argument, sorry, is that your question? At that point, the board's reasonable pertinence finding cannot stand because there is no finding that GELD is solving the broadened problem that the board identified or defined in contradiction to the specification that this problem is beyond distributed storage systems. So your view is that the problem that the inventor was facing, all of the problems that the inventor was facing, just were only solely limited to a distributed storage scenario. I would say that the problems that the inventors stated that they were addressing are in distributive storage systems. They don't exist in other storage systems. Even if they do, the specific problems that the inventors are addressing, as they themselves stated in the 132 patent, the specific problem that they were addressing is that problem as it exists in distributed storage systems. Okay. So just continuing with the claim construction argument, again, it is something that's important both to our reasonable pertinence argument and our field of endeavor argument. You know, against claim language reflecting that clients are communicating, that receiving one or more attributes of a file from one of a plurality of clients, against the specification declaring that the invention relates to networking and particularly to policy-based data management on a distributed storage system, a networked environment with networked clients, and against the rest of the intrinsic record reflecting that the invention addresses problems in the networked environments of distributed storage systems, the board held that the claim clients don't need to be networked. That overbroad claim construction led the board to define an overbroad field of endeavor, and Judge Steele, getting to your point again, that overbroad construction also led the board to improperly broaden the problem to be solved in contradiction to the specification. The specification, again, states that the inventors are solving problems in distributed storage systems correctly construed, the claims also reflect that the inventors are solving problems in these distributed storage systems with these network clients. Turning first to the language of the claims, the word client itself... Do you think that the phrase distributed storage system and network system are synonyms? So, all distributed systems are networked, not all networked systems are distributed. So, if we're solving problems in distributed storage systems, we are necessarily solving those problems in a networked environment. And networking, in your view, means what? So, in the 132 patent, we have networks, local area networks, wide area networks, even the internet. We have something that is in contrast to the centralized mainframe architecture that we see in GELB, where there's just a single machine present, there's no networking, all of the peripherals are directly attached, you may remember the old SCSI cables for hard drives. That's not what we're dealing with in the 132 patent here, we're dealing with some kind of networking among multiple machines. Multiple... What kind of machine can't be on a far end of the cable for it no longer to be networked? You said there's some sort of mainframe machine with some kind of connector to something that you don't want to say makes that connection a network. So, you need to define what the limit is, like the hard drive, on the thing at the non-mainframe end of that line to keep it something other than a network. What is that? I would say the distinction I would draw, and the distinction the 132 patent draws, is peripheral storage devices versus actual machines. You have storage, but it's being connected to this centralized architecture, it's not a self-contained machine when we're thinking about this. When we contrast that to the clients in the network environments of the 132 patent, these are machines. They operate, they have what they need to do to perform as a machine, as opposed to these simple parts, these peripherals that are being discussed in GELD. So, no processor in the peripheral? Is that what we're talking about? No memory in the peripheral? I think we're getting a little bit beyond the briefing, but I would say the distinction we're trying to draw here is... You're trying to make, right at the heart of your argument, is some difference that you want to say is a right-line difference between the mainframe world with something not very intelligent or capable connected to it, and what you call a network world. It feels to me as though maybe one needs to have some precision about what characteristics can't be on both ends. I take your point, Your Honor. The distinction I would draw is this. When we're talking about a distributed system, we're talking about multiple machines, and these machines are processing instructions, capable of processing instructions, capable of functioning as part of the distributed system or autonomously as well. Contrast that to what we have in GELD, where, again, we just have these peripheral devices, these being hooked up directly by cables, into this centralized, single-machine architecture. So, I would say the best distinction I can draw with respect to network and with respect to plurality of clients here is when we're thinking about clients, we're thinking about these machines. Contrast that to what we have in GELD, which, again, these just peripheral storage components that aren't necessarily processing or carrying out any instructions or otherwise participating in a distributed system. Is there something peculiar about a network system compared to the single mainframe machine of GELD that would make it peculiarly hard to translate GELD's teaching into a network environment? And when I say GELD's teaching, I'm saying managing a bunch of data files according to some policies. Yes. So, distributed storage systems present many, many problems, particular to distributed storage systems that simply don't... That concept, that notion from GELD and translating that into a situation where you're also storing a bunch of files according to a certain set of rules, but now it's a network environment. So, I want to make two points on that. So, first, your question is, to me at least, respectfully, seems to be veering into motivation to combine. If GELD is not analogous art, and we contend that it's not, there's no motivation to combine at all. Leaving... And then the second point I would make is that there are unique problems that arise in distributed environments that don't arise in the mainframe systems of GELD, such that persons of ordinary skill wouldn't have even looked to GELD in the first place. Those include things like prioritizing operations among multiple machines in the distributed storage system, achieving consensus, maintaining state across multiple machines in the network environment. How would that exist regardless in a network system, regardless of whether you're trying to manage data files according to a set of rules? That's correct, and that's exactly why GELD's teachings are not pertinent to the distributed storage systems that we're describing in... Describing and claiming in the 132 patent. There are particular challenges arising in the distributed environment that GELD's teaching simply don't address. GELD is simply trying to simplify programming for mainframes, these single machines, non-network environments, centralized architecture. If you are into your rebuttal time, you can use some of it now, or you can save it. I do want to just briefly hit one point on analogous art on the field of endeavor, and then one point on reasonable pertinence. The board's decision rests, in our view, on this claim construction. There's no findings that GELD is in the field of endeavor, as we believe it should be, distributed storage systems, as reflected by plurality of clients being construed to be in a network environment. And there's no findings that GELD would have been reasonably pertinent to a problem in distributed storage systems. The board simply took its broader problem and declared GELD to be reasonably pertinent to that broader problem, which, in our view, contradicts the specification. And because it contradicts the specification, it can't even be sustained on substantial evidence review. For those reasons, the board's decision that its claim construction of plurality of clients should be reversed, and its decision that GELD qualifies as analogous art should be vacated, and the case remanded. Thank you. Mr. Foreman. May it please the court. I think that the most straightforward way to approach this case is the reasonable pertinence analysis. And the board correctly identified the problem in the 132 patent and the problem in GELD, and found that they were the exact same problem. It was this idea of data management system, managing files, and being able to perform operations on them without input from the author of the file. So just looking at the attributes of the file and then selecting a storage location or prioritizing operations. And the fact that GELD is not a network system really has no relevance to that problem. The problem is about data management and how a system is able to identify attributes in a file and perform functions on that file based on the attributes. So Mr. McNish says that, and the section in this brief also says that the pertinence analysis is dependent on the client construction. Why is that not right? That's not right because his argument is really conflating the field of endeavor and reasonable pertinence. So he's saying that because the field of endeavor is network systems, that no art that does not address network systems can be reasonably pertinent. But that's, I mean, the whole point of the reasonable pertinence analysis is to look outside of the field of endeavor. And so the claim... I mean, is his only argument on that score that if it's not in the same field of endeavor then no art can be pertinent? Isn't there a more case-specific argument about reasonable pertinence that here it's wrong to say that something outside the field of endeavor that this particular, because of the client construction, is actually not pertinent because the problem is so different? Well, I think that... I don't know if there's a case holding this, but in this court's decision in Donner, which both parties addressed in the brief, there's a footnote about how there's this contemplated exception where the field is so specific that there couldn't be any art outside of the field that would be reasonably pertinent. But from what I know, there's no case ever actually applying that. And I don't think we have that here. Isn't the question really whether there's substantial evidence to support the board's backfinding that we don't have that case here? Correct. I mean, this is... What evidence is there? Excuse me? What evidence is there that supports the board's finding that distributed storage systems are not so far afield of what's disclosed in Gelb, that a person of ordinary skill in the art wouldn't view them as being, as Gelb, as being reasonably pertinent to the problem that the inventor was confronting? I think if you look at both the specification of the 132 patent and the prosecution history, you can see that the patentee was defining the problem as a data management problem, not as a network problem. So I think that if you look at the prosecution history, especially, there are some nice, clear statements that, for example, on appendix page 1093, it says, the claim dimension deals with the problem of storage systems treating all files alike. And then on the next page, it talks about how the concept of having a storage system treat a first file differently than a second file in accordance with some policies. That's the inventor's own words, or the patentee's own words, about what the problem to be solved was. And that's exactly what Gelb is doing. And nothing in here says that, you know, the problem changes because of a network system versus a non-network system. It's a system receiving files and operating on them based on policies. And I think there's substantial evidence that both the 132 patent and Gelb define, you know, are specifically addressed to that problem. There's nothing further. Thank you. So I'd like to start by picking up on Judge Turano, your point about case-specific analysis being required. And that's exactly it. We're not asking the court to go full Donner technology footnote here. Case law, going back, you know, to Etiker, to N. Ray Clay, holds that the environment in which the invention operates, the field in which the invention operates, can shape what's reasonably pertinent. You know, in Clay, we had the storage tanks as the invention. We had this subterranean formation in the prior art. That subterranean formation wasn't reasonably pertinent, in part because it operated at a different temperature and in a different environment than the storage tanks claimed in the invention. In Ray Etiker, same thing. We have this metal hose clamp. The problem is fastening a metal hose clamp. Different environment than women's garments, which is where the reference that was held not reasonably pertinent by this court came from. Turning to the point on the file history, I just want to read Appendix 1093 here. And it's true. The patentee did say, in contrast, the claimed invention deals with the problem of storage systems treating all files alike. It continues, however, by saying, the claimed invention notes the problem as known distributed storage systems generally do not account for the different requirements placed on these files. So when we're looking at Appendix 1093 through 1096, when we're talking about the problems the patentee is looking to solve, these are problems in distributed storage systems. This confirms the specification statements that the patentees are solving problems in preoccupation with the problems in these distributed storage systems, which have networked clients, which are in a networked environment. Judge Stoll, I want to turn to your question about whether there's substantial evidence to support the notion that GELD is reasonably pertinent to a distributed storage system. I'll straightforwardly say there is not. Their board did not make factual findings to that effect. It rested its holding that GELD was reasonably pertinent on this broader problem, which the storage systems. So if the court holds, as it should, that there is not substantial evidence to support the board's formulation of the problem, this broader formulation that inappropriately excised distributed storage systems from a problem the specification and the file history I might have chose is a problem in distributed storage systems, vacate and remand would be warranted for that reason as well. So ultimately, what this comes down to is GELD, again, single machine, non-networked centralized architecture, not pertinent to problems in multi-machine networked distributed storage systems in which the invention operates, as reflected by our construction of plurality of clients, as clients in a networked environment. Again, we'd ask that the court reverse the board's claim construction, vacate its final written decision, and remand for further proceedings. Thank you, Your Honors. I don't take any more questions in my remaining time. Thank you. I give thanks to all counsel, cases submitted, and I condense our business for the day.